In re

Lehman Brothers Holdings Inc., et al.

Official Form 417A (12/23)

CASE # 08-13555 (MG)

EDWARD O'HARA, PLAINTIFF

V.

U.S. BANK NATIONAL ASSOC. AS TRUSTEE FOR
THE LEHMAN XS TRUST 2006-12N

[Caption as in Form 416A, 416B, or 416D, as appropriate]

ADVERSARY CASE
NO 24-04034 (MG)

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):

   EDWARD O'HARA.

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| [x] Plaintiff | [ ] Debtor |
| [ ] Defendant | [ ] Creditor |
| [ ] Other (describe) _____ | [ ] Trustee |
| | [ ] Other (describe) _____ |

### Part 2:  Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken:

   1/28/25 → MEMORANDUM OPINION AND ORDER DISMISSING E. O'HARA'S ADVERSARY COMPLAINT
   1/27/25 → ORDER DENYING O'HARA'S MOTION FOR RECONSIDERATION.

2. State the date on which the judgment—or the appealable order or decree—was entered:

   1/28/25
   #31   1/27/25

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE LEHMAN XS TRUST 2006-12N    Attorney: S. SHERRY XIA
   HINSHAW & CULBERTSON LLP
   800 THIRD AVE, 13TH FL.
   NEW YORK, NY 10022. (212) 471.6200

2. Party: Bendett & McHugh LAW FIRM, NKA BROCK + SCOTT LAW FIRM    Attorney: VICTORIA TORCELLA.
   BROCK + SCOTT LAW FIRM.
   270 FARMINGTON RD
   FARMINGTON, CT. 06032 (401) 217.8701

3. MARINOSCI LAW GROUP    CHRISTOPHER BAXTER
   275 NATICK RD.
   WARWICK, RI. 02886
   (401) 234.9220

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

*Edward O'Hara*                                    Date: JAN 31, 2025

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):
EDWARD OHARA
1414 KING ST.
GREENWICH, CT 06831
203. 550. 1701

eo.greenwichaltcapital@gmail.com

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

**ADVERSARY CASE # 24-04034**
**Bankruptcy Case 1:08-bk-13555**

**EDWARD O'HARA**                                                  **1/31/2025**

**V.**

**U.S. Bank National ASSOCIATION as Trustee for the LXS 2006-12 N V. O'Hara, Francis, O'Hara, Edward, Et Al**

## CERTIFICATE OF SERVICE

In accordance with the applicable provisions of the Federal Rules of Bankruptcy Procedure, the undersigned certifies that on the 31 day of January 2025 the following documents were served on the U.S. Trustee and all appearing parties by first class mail or by email delivery.

Documents served:

Notice of Bankruptcy, Memorandum Opinion and Order Dismissing Edward O'Hara's Adversary Complaint and Denying Requests for any other Relief, dated 1/12/25

_Edward O'Hara_____**Appellant**

Edward O'Hara. 1414 King St. Greenwich, CT 06831 (203) 550 1701, eo.greenwichaltcapital@gmail.com

Linda A. Riffkin,Assistant U.S. Attorney/ Region 2,Office of the US Trustee ,Alex. Hamilton Custom House

One Bowling Green, Ste 534,NY NY 10004-1408 linda.riffkin@usdoj.gov

USTPregion02.nh.ecf.usdoj.gov,U.S. Trustee Office,150 Court St, Ste 302, New Haven, CT 06510


U.S. Bank National Association: Sherry XIA,Hinshaw and Culbertson, 800 Third Ave.,New York, NY 10022

Bendett & McHugh LLP, nka Brock and Scott LLP, Attn: Victoria Forcella, 270 Farmington Ave., Farmington CT 06032

Marinosci Law Group, LLP Attn: Christopher Baxter, 275 Natick Rd., Warwick RI, 02886

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<u>NOT FOR PUBLICATION</u>

In re

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

Chapter 11

Case No. 08-13555 (MG)

EDWARD O'HARA,

Plaintiff,

v.

U.S. BANK NAT'L ASS'N, AS TRUSTEE FOR
THE LEHMAN XS TRUST 2006-12N,

Defendant.

Adv. Pro. Case
No. 24-04034 (MG)

---

**MEMORANDUM OPINION AND ORDER DISMISSING EDWARD O'HARA'S**
**ADVERSARY COMPLAINT AND DENYING REQUESTS FOR ANY OTHER RELIEF**

*A P P E A R A N C E S*

HINSHAW & CULBERTSON LLP
*Attorneys for Defendant U.S. Bank, as Trustee for the*
*LXS 2006-12N*
800 Third Avenue, 13th Floor
New York, New York 10022
By:    Sherry Xia, Esq,

EDWARD J. O'HARA
*Pro Se Plaintiff*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before this Court is *pro se* plaintiff Edward O'Hara's ("Plaintiff" or "O'Hara")

complaint ("Complaint," ECF Doc. # 1) against U.S. Bank ("Defendant") seeking damages

arising from the Defendant's foreclosure on the Plaintiff's property.[1]  O'Hara also filed a motion

seeking to reimpose the automatic stay which went into effect upon the debtor Lehman Brothers

Holdings, Inc.'s bankruptcy filing on September 15, 2008 (styled as a "Motion to Modify Prior

Stay or Injunction regarding Litigation Concerning The (Lehman Trust), the LXS 2006-12 N," or

"Stay Motion 2," ECF Doc. # 6) in an effort to stop U.S. Bank from enforcing a foreclosure

judgment against him; and two documents styled as amended complaints ("First Amended

Complaint" or "FAC," ECF Doc. # 7; "Second Amended Complaint" or "SAC," ECF Doc. #

11.)

O'Hara also filed several documents in the debtor Lehman Brothers Holdings, Inc.'s

main case (Case No. 08-13555).  On September 30, 2024, he filed a "Motion for Clarification" in

the main bankruptcy case ("Motion for Clarification," Case No. 08-13555, ECF Doc. # 61691).

He also filed a "Motion for an Automatic Stay or Injunction of CT Superior Court Case: FST CV

13 6020232 S, U.S. Bank National Association, as Trustee for the LXS 2006-12 N v. O'Hara,

Francis et al." on the same day, also in the main bankruptcy case ("Stay Motion 1," Case No. 08-

13555, ECF Doc. # 61692 and, together with Stay Motion 2, the "Stay Motions").  O'Hara filed

a document styled as a notice of appearance on September 30 as well, which contains substantive

arguments ("Notice of Appearance," Case No. 08-13555, ECF Doc. # 61693).  Finally, he filed a

copy of his Complaint against U.S. Bank on October 31 (Case No. 08-13555, ECF Doc. #

61701).

U.S. Bank filed a motion to dismiss this adversary proceeding on the adversary

proceeding docket.  ("Motion to Dismiss" or "MTD," ECF Doc. # 5.)  Neither U.S. Bank nor the

debtor have filed any responsive motions in the main case.   While argument on the Motion to

---

[1]     Unless otherwise indicated, ECF docket references shall refer to those in the above-captioned adversary
proceeding.

Dismiss is scheduled for February 4, 2025, the pleadings are closed and the Court concludes that

Motion to Dismiss should be resolved now without argument.

For the following reasons, the U.S. Bank's Motion to Dismiss is **GRANTED**.  O'Hara's

Stay Motions are **DENIED,** and O'Hara's Motion for Clarification is **DENIED.**  O'Hara's

continued filing of frivolous pleadings needs to stop **NOW**.  Further frivolous filings will result

in imposition of sanctions.

## I. BACKGROUND

### A. Facts

On May 6, 2006, nonparty Francis O'Hara ("Francis") executed a promissory note in the

principal amount of $695,900 in favor of MortgageIt, Inc. ("MortgageIt"), U.S. Bank's

predecessor-in-interest.[2]  (MTD ¶ 1.)  On that same date, O'Hara and Francis executed a

mortgage in favor of Mortgage Electronic Registration Systems, Inc. as nominee for MortgageIt,

and pledged the property located at 1414 King Street, Greenwich, Connecticut 06831

("Connecticut Property") as security for the loan.  (*Id.*)  The note and mortgage were ultimately

assigned to Defendant U.S. Bank.  (*Id.* ¶ 2.)  O'Hara contends that this assignment was

"fraudulent and invalid."  (Stay Motion 2 at 3.)

Francis and O'Hara failed to pay on the mortgage.  U.S. Bank first filed suit against

O'Hara on or around October 11, 2011, in Connecticut Superior Court, and it appears that

O'Hara paid $137,657.64 in 2012 to settle the issue and temporarily avoid foreclosure.  (FAC at

6.)  O'Hara claims that this money was not sent by U.S. Bank to the Trustee in the Lehman

Brothers bankruptcy.  (Stay Motion 2 at 2.)  U.S. Bank commenced a second foreclosure action

("Foreclosure Action") against O'Hara in the Connecticut Superior Court on September 30,

---

[2]        While some of these facts are drawn from the Motion to Dismiss, O'Hara does not contest them.

2013. (MTD ¶ 2.) On December 14, 2015, the Connecticut Superior Court granted U.S. Bank's motion for judgment of foreclosure and sale ("Foreclosure Judgment"). (*Id.* ¶ 4.)

O'Hara commenced a barrage of litigation attempting to forestall foreclosure, including: a motion to vacate the Foreclosure Judgment in Connecticut state court, motions for sanctions, additional motions to vacate the Foreclosure Judgment, multiple attempts to remove the foreclosure action to federal court, and personal bankruptcy proceedings. (*See* Exhibits E–H to the MTD; MTD ¶¶ 5–12.) During one such effort, O'Hara argued that U.S. Bank lacked standing to bring the Foreclosure Action on the grounds that the underlying mortgage assignment was faulty (Exhibit D to the MTD); the Connecticut Superior Court ordered briefing on the question of standing (Exhibit E to the MTD), but O'Hara's counsel never filed a brief, so his motion to dismiss was denied (Exhibit F to the MTD). Indeed, each of O'Hara's efforts to delay foreclosure so far has been unsuccessful. Each of O'Hara's personal bankruptcies has been dismissed as well, with repeat findings that his tactics were prejudicial to creditors and "part of a scheme to delay, hinder, or defraud creditors." (MTD ¶ 12; *see also* Exhibit H to the MTD.)

The Foreclosure Judgment continues to stand, albeit updated in 2024 to accurately reflect the amount owed. (MTD ¶ 7.)

## B. Procedural History

On September 30, 2024, O'Hara filed a "Motion for Clarification" in the main Lehman bankruptcy case. He also filed a Stay Motion on the same day, also in the main bankruptcy proceeding, along with a document styled as a notice of appearance. Finally, he filed a copy of his Complaint against U.S. Bank on October 31, on the same day that the adversary proceeding commenced. Neither U.S. Bank nor the debtor has responded to any of these filings.

4

O'Hara filed his first Complaint in this adversary proceeding on October 31, 2024. It was served on an attorney for U.S. Bank, at the latest, on November 19, 2024 (*see* ECF Doc. # 2). U.S. Bank filed its Motion to Dismiss on December 6, 2024. O'Hara then filed his second Stay Motion on December 9, his First Amended Complaint on December 16, and his Second Amended Complaint on December 30.

Looking at only those documents filed in the adversary proceeding, it is worth noting that the second Stay Motion, as discussed below, adds claims against U.S. Bank to those alleged in the Complaint. A stay motion is not a substitute for an amended complaint. After a motion to dismiss is filed, a plaintiff has a right to amend his pleading *once* within twenty-one days of the filing of the motion to dismiss, and after that, may only amend with the opposing party's written consent or the court's leave, pursuant to FED. R. CIV. P. 15(a)(1)–(2). As discussed below, the First Amended Complaint responds in substance to the Motion to Dismiss, so rather than discounting it as an improper second amended complaint filed without this Court's or U.S. Bank's permission, it could be interpreted as O'Hara's reply brief. However, even the most generous interpretation of O'Hara's pleadings leaves his Second Amended Complaint, filed on December 30, out in the cold—it is a second (if not third) amendment to his original Complaint, which he filed without U.S. Bank's or this Court's permission and hence in violation of FED. R. CIV. P. 15(a)(2). But, as discussed below, the Second Amended Complaint does not add any arguments or claims, nor does it respond to the MTD, so this Court will not take it into consideration in determining this case.

As for his three distinct filings in the main Lehman bankruptcy proceeding (the Motion for Clarification, Stay Motion 1, and the Notice of Appearance), there is no indication on the docket that U.S. Bank was served with these papers. U.S. Bank is identified as the intended

5

recipient (if not exactly the defendant) for each of these documents. (*See* Motion for

Clarification at 1; Stay Motion 1 at 1; Notice of Appearance at 1.) The Court has reviewed each

of these pleadings in light of the litigation previously undertaken by O'Hara in state and

bankruptcy court, which resulted in consistent rulings against him.

### C. Arguments

#### 1. Complaint

O'Hara's complaint rests on his argument that the Connecticut state court lacks

jurisdiction over the Foreclosure Action and that this Court instead has jurisdiction. (Complaint

at 3–4.) He argues that this Court has sole jurisdiction over "matters concerning the Lehman XS

Trust 2006-12 N" because, pursuant to one of Judge Peck's orders in the main bankruptcy case

(the order is not specified), all claims brought by this trust, for which U.S. Bank is the trustee,

must be brought in the Bankruptcy Court for the Southern District of New York. (*Id.*) From one

of his filings in the main bankruptcy case, he explains that the order pertains to an RMBS

Settlement Agreement, involving various trusts (including the trust for which U.S. Bank is

trustee). (Motion for Clarification at 3.) He also points to a decision by the New York Supreme

Court which, to his eye, confirms that this Court has sole jurisdiction over all cases related to the

trust. (*Id.*) O'Hara attaches a number of filings in a New York State Supreme Court case

between U.S. Bank and others who sought judicial instruction regarding a settlement payment

(*see* Exhibits 1-3 to the Complaint); the only one of these which touches on jurisdiction is Justice

Melissa Crane's order, which states that this Court has retained jurisdiction over certain

settlement payments (Exhibit 3 to the Complaint at 1).

O'Hara also claims that U.S. Bank never owned the mortgage on the Connecticut

Property, and so never had standing to sue O'Hara; because of this alleged lack of standing, he

6

claims that U.S. Bank committed fraud. (Complaint at 4.) This is the same argument O'Hara's

attorney made to the Connecticut Superior Court and failed to pursue. O'Hara further claims that

the notes relied upon by U.S. Bank in the Connecticut state court proceedings were forgeries, but

he provides no evidence or explanation for why he believes this. (*Id.* at 5.)

O'Hara seeks damages from U.S. Bank, alleging that due to their actions, he was not able

to profit by selling the Connecticut Property and had to shoulder the cost of "defend[ing against]

frivolous law suits in State and federal Court" over thirteen years and the cost from the

concomitant "loss of reputation and standing in the community." (*Id.* at 4–5.) O'Hara filed four

counts against U.S. Bank: (1) fraud, based on the Defendant's alleged misrepresentations

concerning its ownership of the mortgage; (2) declaratory judgment for (the same) fraud; (3)

fraud on the court, based on the same facts; and (4) a violation of the Fair Debt Collection

Practices Act ("FDCPA"), based O'Hara's allegation that U.S. Bank's pursuing the Foreclosure

Action constitutes "harassing, oppressive, and or abusive conduct toward the Plaintiff." (*Id.* at

7–9.) He seeks an immediate stay of the Connecticut Foreclosure Action, an injunction barring

the Defendant from "filing any further motion or other action amended, modified, or substituted

in the CT state superior court action" (the Foreclosure Action), and the payment of legal fees and

damages. (*Id.* at 9.)

### 2. Motion to Dismiss

U.S. Bank moves to dismiss the Complaint under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

Since the key question whether U.S. Bank has standing to bring the Foreclosure Action in

Connecticut state court has already been decided against O'Hara in the Foreclosure Action itself,

U.S. Bank first argues that this Court lacks subject matter jurisdiction, as the *Rooker-Feldman*

doctrine provides that federal courts cannot act as courts of appeal from state court decisions.

(MTD ¶¶ 17–24.) Nor can federal courts adjudicate claims that were not raised in a state court matter but are nonetheless inextricably intertwined with the state court judgment—meaning, in this instance, the entirety of O'Hara's Complaint. (*Id.*) U.S. Bank argues that O'Hara's Complaint meets all four requirements of the *Rooker-Feldman* doctrine: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff seeks district court review of the judgment; and (4) the state court judgment was entered before the plaintiff's federal court proceedings commenced." (*Id.* ¶¶ 22–23.)

Second, U.S. Bank argues that this Complaint does not arise under, arise in, or relate to a case under the Bankruptcy Code, so this Court lacks jurisdiction over it. (*Id.* ¶¶ 25–30.) O'Hara's claims for fraud, declaratory judgment, fraud on the court, and the FDCPA violation all arise from the substantive state law concerning U.S. Bank's standing to bring a foreclosure action and the Connecticut state court's jurisdiction over such actions. Additionally, the loan and O'Hara's property have nothing to do with the Lehman bankruptcy, nor can they affect Lehman's reorganization. Hence, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b).

Third, U.S. Bank argues that O'Hara's claims fail as a matter of law because of *res judicata*. (*Id.* ¶¶ 32–36.) Since the jurisdictional and standing issues could have been, and were, litigated in the Foreclosure Action, O'Hara is barred from raising them here. Applying Connecticut law, U.S. Bank argues that all four requirements of *res judicata* are met: (1) the Foreclosure Judgment constituted a prior adjudication on the merits, (2) the Foreclosure Action involved identical parties, (3) O'Hara had a fair opportunity to litigate his claims in the Foreclosure Action (and many times in the pursuing 13 years), and (4) the same underlying

8

claims are at issue. Moreover, since Connecticut takes a transactional approach to *res judicata*, which means that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy; therefore, since O'Hara's lack of standing and jurisdiction defenses underlie all four of his claims in the present action, the fact that those claims rely on his two defenses, which are in turn barred by *res judicata*, means that the four claims are also barred.

Fourth, the defendant argues that the claims are time-barred. (*Id.* ¶¶ 37–39.) Connecticut law applies a three-year statute of limitations to fraud claims, beginning with the date of the act or omission complained of rather than when the plaintiff discovers the injury; therefore, O'Hara should have brought his fraud claims by 2016 (three years after U.S. Bank brought the Foreclosure Action). And claims arising under the FDCPA must be made within a year of the alleged violation, so that claim also comes ten years too late.

Fifth and finally, U.S. Bank contends that O'Hara fails to plead that U.S. Bank is a debt collector as defined by the FDCPA. (*Id.* ¶ 40.)

### 3. First Amended Complaint

The First Amended Complaint largely restates the allegations in the original Complaint, and adds the argument that U.S. Bank violated the automatic stay in the Lehman bankruptcy by filing suit against O'Hara in 2011 on behalf of the Trust in a court which allegedly did not have jurisdiction over the matter (since foreclosure actions, per O'Hara, had to be filed in this Court), by failing to alert the Connecticut Superior Court of the pending automatic stay, and by failing to send the proceeds to the U.S. Trustee in the Lehman case. (FAC at 3–4.) (He does not substantiate the last claim with any evidence.) The automatic stay was in effect in the debtor's case from 2008 through 2012. (*Id.* at 4.) O'Hara argues that *Rooker-Feldman* and *res judicata*

9

do not apply because all motions filed by U.S. Bank outside of this Court "were moot and void,"
since this Court has sole jurisdiction over the underlying matter, and no other court which has
issued a decision in any of the cases between O'Hara and U.S. Bank over the past 13 years has
had jurisdiction. (*Id.* at 4–5.) He also argues that the elements of fraud on the court are present:
(1) U.S. Bank knew that this Court has sole jurisdiction over all foreclosure actions but brought
suit elsewhere; (2) that act is material because the Foreclosure Action involves a property valued
at $1.65 million, and U.S. Bank previously retained the reinstatement payment O'Hara made to
settle the 2011 lawsuit; (3) neither the Connecticut state courts, nor the district courts, nor
O'Hara knew that this Court had sole jurisdiction and hence did not know about the fraud; and
(4) by bringing suit in Connecticut state court, U.S. Bank impacted the judicial process. (*Id.* at
7–8.) He also adds a count for "damages for litigation abuse," claiming that the filing of the
2011 action and the Foreclosure Action was frivolous as U.S. Bank knew the Connecticut state
court had no jurisdiction. (*Id.* at 9–10.)

### 4. Stay Motion in the Adversary Proceeding

In his Stay Motion filed in this adversary, O'Hara seeks the re-imposition of the stay
"pertaining to all litigation concerning . . . the LXS 2006-12 N" Trust. (Stay Motion 2 at 1.) The
automatic stay was lifted by Judge Peck in 2012. (*Id.*) O'Hara does not explain why the stay
should be reimposed, and this motion reads like a rehashing of the Complaint, with additional
allegations. O'Hara reiterates his claim concerning the alleged violation of the automatic stay.
(*Id.* at 2.) He also argues that the assignment of the mortgage from Mortgage Electronic
Registrations Systems to U.S. Bank in 2011 was invalid and fraudulent, as it occurred during the
pendency of the automatic stay in the debtor's case. (*Id.* at 3.) He restates his standing argument
from his Complaint. (*Id.*) He claims that an "[e]xpert U.S. Securities law attorney . . . testified .

. . that the loan in question, commenced in May 2006, and claimed by the Lehman Trust the LXS
2006-12 N, was actually found to be listed as an asset of a Goldman Sachs Trust and Merrill
Lynch Trust at year end in 2006" in SEC filings. (*Id.* at 3.) Finally, he alleges that an attorney
for U.S. Bank bribed a judge who "made approximately 143 rulings in the state court action
involving . . . the LXS 2006-12 N." (*Id.* at 3–4.)

### 5. Second Amended Complaint

The Second Amended Complaint appears to be a certificate of service of one of the
earlier motions in the adversary proceeding upon U.S. Bank's counsel. It attaches a handful of
receipts which indicate that O'Hara sent copies of a document in this case to U.S. Bank. There
are no additional arguments or claims asserted in this document.

### 6. Filings in Main Bankruptcy Case

O'Hara's three filings in the main bankruptcy case, including the first of two of his Stay
Motions, contain the same arguments and allegations as his filings in the adversary proceeding:
he reiterates in each his argument that this Court has exclusive jurisdiction over his foreclosure
proceeding.

## II. LEGAL STANDARD

"When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts
consider the Rule 12(b)(1) challenge first." *Whyte v. Bayview Loan Servicing, LLC*, No. 21-CV-
3301 (PKC) (LB), 2022 WL 4484664, at *3 (E.D.N.Y. Sept. 27, 2022) (cleaned up). "This is
because if a court determines that it lacks subject matter jurisdiction, then the defendant's other
defenses and objections become moot and do not need to be determined." *Id.* (cleaned up).
"Federal courts must determine that they have jurisdiction before proceeding to the merits."
*Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Notwithstanding the liberal pleading standard

afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction." *Dieujuste v. Sin*, 731 F. Supp. 3d 440, 446 (E.D.N.Y.), *reconsideration denied*, 734 F. Supp. 3d 232 (E.D.N.Y. 2024), *and aff'd*, No. 24-1522-CV, 2025 WL 65956 (2d Cir. Jan. 10, 2025. "Although courts hold *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers, pro se litigants must establish subject matter jurisdiction." *Id.* (cleaned up). "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.*; *see also* FED. R. CIV. P. 12(h)(3).

In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," and refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction." *Whyte*, 2022 WL 4484664, at *3 (cleaned up). "The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (cleaned up).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must set out only enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (cleaned up). Plausibility "is not akin to a probability requirement"; rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Following the Supreme Court's decision in *Iqbal*, courts use a two-prong approach when considering a motion to dismiss. *See, e.g., Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732(DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (acknowledging a "two-pronged"

12

approach to deciding motions to dismiss). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in the factual garb. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 129 S.Ct. at 1949–50); *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (stating that the court must "accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally") (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)); *Boykin v. Keycorp*, 521 F.3d 202, 204 (2d Cir. 2008) ("In reviewing a motion to dismiss, we accept the allegations in the complaint as true.") (citation omitted); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, bald assertions and conclusions of law will not suffice.") (cleaned up). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1951 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (citation omitted). Meeting the plausibility standard requires a complaint to plead facts that show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (citation omitted). A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (cleaned up). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."

13

*Id.* (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (when deciding motion to dismiss, court will look at facts and allegations contained in the complaint and in any documents either incorporated into the complaint by reference to attached as exhibits, but may also look at public records). Courts also consider documents not attached to the complaint or incorporated by reference, but "upon which the complaint *solely* relies and which *[are] integral to the complaint.*" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up) (emphasis in original); *see also Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677, 690 (Bankr. S.D.N.Y. 2008) ("A court may even consider a document that has not been incorporated by reference where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citation and quotation marks omitted).

### III. <u>DISCUSSION</u>

#### A. Rule 12(b)(1) and Subject Matter Jurisdiction

##### 1. <u>*Rooker-Feldman*</u>

"Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments." *In re Wilson*, 410 F. App'x 409, 410 (2d Cir. 2011). The doctrine is premised upon two United States Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of*

*Appeals v. Feldman*, 460 U.S. 462 (1983). According to *Rooker*, *Feldman*, and their progeny, a federal trial court cannot sit in the place of a court of appeal reviewing facts or determinations made by state courts. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83–84 (2d Cir.2005); *see also In re Robinson*, 265 B.R. 722, 728 (6th Cir. BAP 2001) (applying *Rooker-Feldman* doctrine in context of objection to proof of claim); *In re Abboud*, 237 B.R. 777, 780 (10th Cir. BAP 1999) (affirming bankruptcy court's refusal to disallow claim pursuant to application of *Rooker-Feldman* doctrine). *Rooker-Feldman* also may apply "over a suit that is a *de facto* appeal from a state court judgment," because in such circumstances, "the district court is in essence being called upon to review the state court decision." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (cleaned up).

In *Exxon Mobil*, the Supreme Court set forth the following rule of application for the doctrine: "The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). From the Supreme Court's decision in *Exxon Mobil*, the Second Circuit extrapolated four requirements for application of the *Rooker-Feldman* doctrine: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced." *Wilson*, 410 Fed. App'x at 410 (internal quotation marks omitted) (quoting *Hoblock*, 422 F.3d at 85). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed

15

substantive." *Hoblock*, 422 F.3d at 85. Additionally, the Court will "assume without deciding

that *Rooker-Feldman* applies when a state trial court renders its judgment prior to the plaintiff

filing suit in federal court—irrespective of the status of the plaintiff's appeals in the state court

system." *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 Fed. App'x 89, 92 (2d Cir. 2012).

This is because the "applicability of the *Rooker-Feldman* doctrine turns not on the similarity

between a party's state-court and federal-court claims (which is, generally speaking, the focus of

ordinary preclusion law), but rather on the *causal relationship* between the state court judgment

and the injury of which the party complains in federal court." *McKithen v. Brown (McKithen I)*,

481 F.3d 89, 97–98 (2d Cir.2007) (emphasis in original). "[A] party is not complaining of an

injury 'caused by' a state court judgment when the exact injury of which the party complains in

federal court existed *prior* in time to the state court proceedings, and so could not have been

'caused by' those proceedings." *Id.* at 98.

    In the Second Circuit, attacks on state court foreclosure judgments are barred by *Rooker-*

*Feldman*. *See In re Wilson*, 410 Fed. App'x at 410–11 (holding that *Rooker-Feldman* applied

where party sought to set aside a judgment of foreclosure because movant "lost" in state court

when foreclosure judgment was entered against her property, movant "complain[ed] of injuries

caused by the state court foreclosure judgment" because the "crux of her complaint" was that the

foreclosure was wrongful, plaintiff invited federal court review and rejection by filing a

complaint in complaint, and foreclosure judgment had been entered prior to commencement of

federal case); *In re Ward*, 423 B.R. 22, 27–28 (Bankr. E.D.N.Y. 2010) (holding that *Rooker-*

*Feldman* applied where party sought to set aside a judgment of foreclosure on the grounds that

no original note was produced in the foreclosure action, that the mortgage had been rescinded,

and that the plaintiff in the foreclosure action either did not exist or was not a proper party to the

action, because "*Rooker-Feldman* . . . strips federal subject matter jurisdiction over lawsuits that

are, in substance, appeals from state court decisions" (cleaned up)); *Rene v. Citibank, N.A.*, 32 F.

Supp. 2d 539, 543 (E.D.N.Y.1999) (dismissing claim for lack of jurisdiction pursuant to *Rooker-*

*Feldman* when plaintiff challenged previous foreclosure judgment by filing a complaint in

federal district court alleging violations of 42 U.S.C. § 1983 and the Racketeer and Corrupt

Organizations Act (RICO), since "[t]he claims raised . . . implicate[d] the propriety of the state

judgment of foreclosure and eviction—the very issues apparently decided by the state court");

*Parra v. Greenpoint Mortgage Co.*, No. 01 Civ.2010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar.

26, 2002) ("The fact that [a] plaintiff alleges that the state court judgment was procured by fraud

does not remove his claims from the ambit of *Rooker-Feldman* . . . . Under *Rooker-Feldman*,

even if the state court judgment was, in fact, wrongfully procured the state court judgment

remains in full force and effect until it is reversed or modified by an appropriate state court."

(cleaned up)).

　　　　It is undisputed that O'Hara lost in state court—hence the entry of the Foreclosure

Judgment against him. The injuries he complains of all arise from entry of this judgment against

him—it was the entry of the allegedly fraudulently-obtained judgment which gave rise to his

damages ranging from the cost of his house to his attorneys' fees. By filing a complaint in this

Court and seeking damages and an injunction on the grounds that the Foreclosure Action and

Judgment are faulty, he invites federal court review and rejection of the Foreclosure Judgment.

And finally, the state court judgment was rendered approximately a decade before this adversary

proceeding commenced. This case fits neatly with the clear line of precedent in this Circuit

barring relitigating the foreclosure actions in federal courts. No matter the (questionable, in this

case) merits of O'Hara's claims, this Court lacks subject matter jurisdiction to hear every one of

17

the claims he alleges because they are all, in substance, attempts to appeal the Foreclosure

Judgment.

Because the *Rooker-Feldman* doctrine disposes of all of O'Hara's claims, this Court need

not reach the other bases for dismissal of this case. This Court cannot hear O'Hara's Complaint

nor his second Stay Motion. The grounds for dismissing the Complaint likewise support denial

of each of the motions that O'Hara filed in the main case.

## IV. CONCLUSION

For the foregoing reasons, U.S. Bank's Motion to Dismiss is **GRANTED**. O'Hara's Stay

Motions are **DENIED**. O'Hara's Motion for Clarification is **DENIED**. O'Hara's continued

filing of frivolous pleadings needs to stop **NOW**. Further frivolous filings will result in

imposition of sanctions.

**IT IS SO ORDERED.**

Dated:     January 21, 2025
               New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (MG) |
| EDWARD O'HARA,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NAT'L ASS'N, AS TRUSTEE FOR THE LEHMAN XS TRUST 2006-12N,<br><br>Defendant. | Adv. Pro. Case<br>No. 24-04034 (MG) |

## ORDER DENYING O'HARA'S MOTION FOR RECONSIDERATION

On January 21, 2025, the Court issued a single Opinion denying *pro se* movant O'Hara relief in the main Lehman case (*see* Case No. 08-13555, ECF Doc. # 61739) and granting the Motion to Dismiss of U.S. Bank of the *pro se* complaint filed by plaintiff O'Hara (*see* A.P. 24-04034, ECF Doc. # 13).

In the main case, O'Hara sought to re-impose the automatic stay which went into effect upon the debtor Lehman Brothers Holdings., Inc.'s bankruptcy filing on September 15, 2008 (styled as a "Motion for an Automatic Stay or Injunction of CT Superior Court Case: FST CV 13 6020232 S, U.S. Bank National Association, as Trustee for the LXS 2006-12 N v. O'Hara, Francis et al.," or "Stay Motion 1," ECF Doc. # 61692, case no. 08- 13555), in an effort to stop U.S. Bank from enforcing a foreclosure judgment against him. The Court's Opinion also denied O'Hara's "Motion for Clarification" in the main bankruptcy proceeding ("Motion for Clarification," Case No. 08-13555, ECF Doc. # 61691) and his various requests for other relief.

The adversary complaint sought damages arising from the Defendant's foreclosure on the Plaintiff's property. O'Hara sought to re-impose the automatic stay in the adversary proceeding as well, via a motion styled as a "Motion to Modify Prior Stay or Injunction Regarding Litigation Concerning the (Lehman Trust), the LXS 2006-12 N" ("Stay Motion 2"). (ECF Doc. # 6). The Court granted U.S. Bank's Motion to Dismiss the Adversary Complaint, denied the relief sought in Stay Motion 2, and also denied each of O'Hara's requests for relief in main Lehman case.

The Court concluded in its January 21, 2025 Opinion as follows: "For the following reasons, the U.S. Bank's Motion to Dismiss is **GRANTED**. O'Hara's Stay Motions are **DENIED,** and O'Hara's Motion for Clarification is **DENIED.** O'Hara's continued filing of frivolous pleadings needs to stop **NOW**. Further frivolous filings will result in imposition of sanctions." *Id.* at 3.

The Motion for Reconsideration is frivolous and is **DENIED**. The Court directs the Clerk of the Court not to file any further pleadings by O'Hara either in the main Lehman case— 08-13555, or in the adversary proceeding—24-04034 (MG), *except* for any Notices of Appeal in the main case or in the adversary proceeding, and pleadings in support of any timely filed appeals. Further attempted filings in this Court, except relating to any appeals filed by O'Hara, will result in imposing monetary sanction.

**IT IS SO ORDERED.**

Dated:    January 27, 2025
          New York, New York

                                        *Martin Glenn*
                                    MARTIN GLENN
                        Chief United States Bankruptcy Judge